## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF PUERTO RICO

HERIBERTO OFRAY-CAMPOS
    Petitioner,

vs.

              Docket No.: 09-2190
                       02-393

UNITED STATES OF AMERICA
    Respondent.
_____/

## CORRECTED MEMORANDUM OF LAW AND SUPPORTING APPENDIX IN SUPPORT OF MOTION TO CORRECT VACATE, AND/OR SET-ASIDE CONVICTION PURSUANT TO TITLE 28 U.S.C. § 2255

Comes now Heriberto Ofray-Campos with this his Corrected Memorandum of Law and Supporting Appendix in support of Motion to Correct and/or Set Aside Conviction pursuant to Title 28 U.S.C. § 2255 and in support provides as follows:

### SUMMARY OF THE PROCEDURAL HISTORY

On October 2, 2002, the grand jury in the District of Puerto Rico returned a two-count indictment charging petitioner, Pedro J. Diaz-Clavell (Diaz), Dennys Cruz-Pereira (Cruz), Mizaury Lopez-Soto (Lopez), Modesto Zaragoza-Lasa (Zaragoza) and 38 co-defendants with conspiracy to possess with intent to distribute an excess of five kilograms of cocaine, 50 grams or more of crack cocaine and one kilogram or more of heroin in violation of Title 21 USC §§ 841(a)(1) and 846 while Count 2 alleged a narcotics forfeiture count. (D.E. 12) On August 5, 2003, a thirty-one (31) day jury trial commenced involving Petitioner and the alleged co-conspirators.

On September 29, 2003, the jury returned a verdict of guilt as to the charged offense. (D.E. 724) On February 28, 2005, Judgment was entered and Petitioner was incarcerated for a term of 200 months; 5 years Supervised Release and a $10,000 fine was imposed. On February 28, 2005, Petitioner's counsel filed a timely Notice of Appeal. (D.E. 1298)

On July 7, 2008, the First Circuit Court of Appeals affirmed Petitioner's sentence and conviction. See *United States v. Ofray-Campos,* 2008 WL2640007 (C.A. 1 (Puerto Rico)). On November 10, 2008, Petitioner's request for writ of certiorari was denied by the United States Supreme Court. See *Ofray-Campos v. United States,* Docket Number 08-6771.

This timely petition requesting Petitioner's conviction be vacated follows.

## ARGUMENT

## I. THE CONVICTION OF MR. OFRAY-CAMPSO IS VIOLATIVE OF HIS SIXTH AMENDMENT RIGHT TO EFFECTIVE ASSISTANCE OF COUNSEL

### 1) The Performance of Counsel for Mr. Ofray-Campos Fell Below an Objective Standard of Reasonableness During the Pre-Trial Trial and Appellate Phases

#### a. Standard Review - Ineffectiveness

In *Strickland v. Washington*, 466 U.S. 668, 80 L.Ed.2d 674, 104 S.Ct. 2052 (1984), the Supreme Court established a two prong test to govern ineffective assistance of counsel claims. To obtain reversal of a conviction or to vacate a sentence based on ineffective assistance of counsel the defendant must show: (1) that counsel's performance fell below an objective standard of reasonableness; and (2) that there is a reasonable probability that, but for counsel's objectively unreasonable performance, the result of the proceeding would have been different. *Id*. 466 U.S. at 688-689; *Williams v. Taylor*, 120 S.Ct. 1495, 1512-16; 146 L.Ed.2d 389 (2000).

The Court stated that, "judicial scrutiny of counsel's performance must be highly deferential" and added that "a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance". *Id*    The Court clarified that this reference to "highly deferential scrutiny" referred only to the first or performance prong of the test and meant that,

> "... the defendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'"

*Id. Strickland v. Washington*, 466 U.S. at 689-691

The Supreme Court noted that,

"a single, serious error may support a claim of ineffective assistance of counsel."

*Id. Kimmelman v. Morrison*, 477 U.S. at 384.

The Court added that this "single serious error" could cause counsel's performance to fall "below the level of reasonable professional assistance", even where, "counsel's performance at trial was "generally creditable enough", and even where counsel had made "vigorous cross-examination, attempts to discredit witnesses, and [an] effort to establish a different version of the facts." *Id.* 477 U.S. at 386.

> "Viewing counsel's failure to conduct any discovery from his perspective at the time he decided to forego that stage of pretrial preparation and applying a 'heavy measure of deference', *ibid.*, to his judgment, we find counsel's decision unreasonable, that is, contrary to prevailing professional norms. The justification Morrison's attorney offered for his omission betray a startling ignorance of the law--or a weak attempt to shift blame for inadequate preparation. 'Counsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary.' *Id.* Respondent's lawyer neither investigated, nor made a reasonable decision not to investigate the State's case through discovery."

*Id. Kimmelman v. Morrison*, 477 U.S. at 385.

If the record does not "conclusively" demonstrate "strategic reasons" for counsel's failures, the district court entertaining a motion under 28 USC § 2255 must hold an evidentiary hearing. *A subsequent affidavit from counsel will not suffice to establish a trial strategy, nor absolve the district court from the requirement of holding an evidentiary hearing.* [1]

### b. Standard Review – Prejudice Prong

In writing for the majority in *Strickland v. Washington*, 466 U. S. 668, 80 L.Ed.2d 674, 104 S.Ct. 2052 (1984), Justice O'Connor stated the general rule that, actual ineffectiveness claims

---

[1] *See Smith v. McCormick*, 914 F.2d 1153, 1170 (9th Cir. 1990) and *United States v. Giardino*, 797 F.2d 30, 32 (1st Cir. 1986) and *Lindhorst v. United States*, 585 F.2d 361, 365 (8th Cir. 1978).

alleging a deficiency in attorney performance are subject to a general requirement that the defendant

affirmatively prove    prejudice."

*Id.* 466 U.S. at 693, 80 L.Ed.2d at 697.

More specifically, Justice O'Connor set forth the now well known statement of the test for

"prejudice" in claims of actual ineffectiveness of counsel as:

> "The defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome."

*Id.* 466 U.S. at 695, 80 L.Ed.2d at 698.

The Court further specifically rejected the application of the "actual prejudice" standard of *United*

*States v. Frady*, 456 U.S. 152, 71 L.Ed.2d 816, 102 S.Ct. 1584 (1982), to claims of ineffective

assistance of counsel, with the following admonishment:

> "The principles governing ineffectiveness claims should apply in federal collateral proceedings as they do on direct appeal or in motions for a new trial. As indicated by the 'cause and prejudice' test for overcoming procedural waivers of claims of error, the presumption that a criminal judgment is final is at its strongest in collateral attacks on that judgment. *See United States v. Frady*, 456 U.S. 152, 162-169, 71 L.Ed.2d 816, 102 S.Ct. 1558 (1982). An ineffectiveness claim, however, as our    articulation of the standards that govern decision of such claims makes clear, is an attack on the fundamental fairness of the proceedings whose result is challenged. Since fundamental fairness is the central concern of the writ of habeas corpus, *see id.* at 126, no special standards ought to apply to ineffectiveness claims made in habeas proceedings."

*Id. Strickland*, 466 U.S. at 697-98, 80 L.Ed.2d at 700.

The Court hearing an ineffectiveness claim should consider the totality of the factors which

guided the decision maker in the challenged proceeding, then try to determine which factors were or

were not "affected" by counsel's errors. *Id. Strickland v. Washington,* 466 U.S. at 696, 80 L.Ed2d at

699.

Based on the foregoing facts and law, Mr. Ofray-Campos has affirmatively pleaded "prejudice"

in his case within the meaning of *Strickland v. Washington*, 466 U.S. 668, 80 L.Ed2d 674, 104 S.Ct.

2052 (1984) and *United Stases v. Glover*, 121 S.Ct. 692 (2001); *Williams v. Taylor*, 120 S.Ct. 1495,

4

1512-16, 146 L.Ed.2d 389 (4-18-00); *Freeman v. Lane,* 962 F.2d 1252 (7th Cir. 1992) and *Orazio v. Dugger,* 876 F.2d 1508, 1513-14 (11th Cir. 1989).

**COUNSEL RENDERED INEFFECTIVE ASSISTANCE IN VIOLATION OF PETITIONER'S SIXTH AMENDMENT CONSTITUTIONAL RIGHT WHEN HE FAILED TO ADVISE PETITIONER OF THE RELEVANT PORTIONS OF THE FEDERAL SENTENCING GUIDELINES AND HOW THE GUIDELINES WOULD AFFECT HIS OVERALL SENTENCE THUS RENDERING PETITIONER'S DECISION TO PROCEED TO TRIAL INVOLUNTARY**

Petitioner presents that counsel rendered ineffective assistance in violation of his Sixth Amendment right to effective assistance of counsel when his attorney during the pre-trial failed to explain to Petitioner the relevant conduct portions of the guidelines, how the sentence could have been enhanced by the mere allegation that Petitioner possessed a firearm or that he could be enhanced for be some sort of leader organizer if convicted. There was no explanation of the acceptance of responsibility sections of the Federal Sentencing Guidelines and how the same would be used to calculate his final sentence and mitigate his sentence by pleading guilty. Petitioner presents that at no time during the pre-trial preparation did counsel ever take the opportunity to explain to Petitioner how his sentence would be calculated if he proceeded to trial versus pleading guilty. There was never any explanation of the balance of pleading guilty versus proceeding to trial.

Counsel failed to explain to Petitioner how the government would use the testimony of the government informants and would attribute drug quantities for sentencing purposes that were not alleged in the indictment. Petitioner was always under the impression that he would held accountable *only* for the alleged quantities listed in the indictment and based on those assurances, made an uninformed decision to proceed to trial. Basically, he was under the position that he would be sentenced under those alleged quantities if he proceeded to trial and had no knowledge or idea that the sentences would be calculated via the sentencing guidelines. It was not until after the preparation of the PSI Report and the sentence was completed, that reality was presented.

5

Petitioner steadfastly presents that had he known how the Federal Sentencing Guidelines in the most basic of forms would be used to calculate his sentence, how the court could enhance his sentence based on managerial roles and roles for possession of firearms and so forth, he would have not proceeded to trial, would have entered into a plea agreement with the government and would have mitigated his overall sentence via the acceptance of responsibility sentence reductions. At no point during the pre-trial preparation did counsel ever take the opportunity to advise petitioner of the Sentencing Guidelines § 3E1.1 which would lower Petitioner's sentence substantially should he have decided to accept a government offer. (See Appendix A - Sworn Affidavit)

In order to prevail on [an ineffective counsel argument], the defendant must show that his attorney made "errors so serious that counsel was not functioning as the counsel guaranteed ... by the Sixth Amendment" and that "counsel's" errors were prejudicial; that is, "so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Strickland,* 466 U.S. at 687, 104 S.Ct. at 2064. The court pointed out that because of the distorting effect of hindsight, a reviewing court must exercise care in determining whether counsel's actions fall below an objective standard of reasonableness. Petitioner has a right to competent counsel during the critical stages of the criminal process. *See Caruso v. Zelinsky,* 689 F.2d 435 (3rd Cir. 1982). Moreover, petitioner "has the right to make a reasonably informed decision whether to accept a plea offer." *United States v. Day,* 969 F.2d 39, 43 (3rd Cir.1992) (*citing Hill v. Lockhart,* 474 U.S. 52, 56-57, 106 S.Ct. 366, 88 L.Ed.2d 203 (1985)). Counsel's incompetent advice, violated the petitioner's Sixth Amendment right to counsel. *See McMann v. Richardson,* 397 U.S. 759, 771, 90 S.Ct. 1441, 25 L.Ed.2d 763 (1970).

As an analogy, in *United States v. McCoy,* 215 F.3d 102 (D.C. Cir. 2000) counsel advised his client of an incorrect application of the Sentencing Guidelines. On appeal, McCoy argued that his plea was unconstitutional because it was based on ineffective assistance of counsel. The District of Colombia agreed; it found that McCoy's guilty plea had not been knowingly and voluntarily made. *Id.* Following this same analogy, Petitioner provides that his decision to proceed to trial was based

on his attorney's gross misadvise of the application of the relevant conduct of the sentencing guidelines.    The *McCoy* Court noted that "[W]hile not every error made in calculating an applying the guidelines would constitute deficient performance under *Strickland,* the Court emphasized that 'familiarity with the structure and basic content of the Guidelines, had become a necessity for counsel who seek to give effective representation.'" *Id.* at 508

The Court further found that the prejudice prong of *Strickland* test was satisfied, in that the difference between the sentencing ranges was so significant that there was a reasonable probability that if *McCoy* had been given correct information he would not have entered a guilty plea. *Id.*[2] Counsel's failure to familiarize himself with the relevant portions of the Sentencing Guidelines causes his actions to fall below a reasonable standard of performance because a "[c]riminal defense attorneys practicing in the federal courts are expected to keep abreast of issues that affect his client's case." *Id. United State v. Loughery*, 908 F.2d 1014 (D.C. Cir. 1990)

In Petitioner's cause, he must only show that there is a "reasonable probability" that the results of his decision to proceed to trial would have been different. *Id. Williams v. Taylor*, 529 U.S. 362, 386, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000) and based on the difference in sentencing guideline ranges, there could be no doubt that a different outcome is evident.

Presently Petitioner is sentenced under a guideline 34 with a Category I for a sentence of 188-235 months.  Petitioner was sentenced to 200 months incarceration.  Had counsel properly taken the time to advise Petitioner how the relevant conduct portions of the sentencing guidelines applied to his

---

[2] Although Petitioner proceeded to trial based on his counsel's lack information of the relevant conduct portions of the Sentencing Guidelines, the same analogy as that presented by the *McCoy* Court can be reached in Petitioner's case. Had it not been for the lack of information received by his trial attorney, Petitioner would have accepted a plea of guilt and mitigated his sentence.

case Petitioner would have accepted a plea of guilty and would have ultimately resulted in a guideline range of 31 with an exposure to as little of 108 months incarceration.[3]

Based on the record and the files before this Court, there is a reasonable probability that counsel's actions have reached a level of ineffectiveness as enumerated in *Strickland*. Furthermore, there could be no strategic reason why counsel can justify his failure to explain the implications of the guidelines relevant conduct section to Petitioner. *See United States v. Acklen*, 47 F.3d 739, 743-44 (5th Cir. 1995) (remanding for evidentiary hearing where there was nothing in record to indicate counsel's failures were attributable to strategic choice among all plausible alternatives available for defense); *United States v. Dawson*, 857 F.2d 923, 929 (3rd Cir. 1988)(absent evidence in the record, "this court will not speculate on trial counsel's motives"); *Nichols v. United States,* 75 F.3d 1137 (7th Cir. 1996) (same).

Accordingly, Petitioner respectfully prays this Honorable Court determine that counsel's actions have reached the level of ineffectiveness and remand for an evidentiary hearing on the merits raised herein.

## COUNSEL RENDERD IN EFFECTIVE ASSISTANCE WHEN HE FAILED TO REPRESENT PETITONER ALL STAGES OF THE PROCEEDINGS DURING THE TRIAL

Petitioner presents that counsel rendered ineffective assistance when he failed to be present at all stages of the proceedings against Petitioner especially when presenting incriminating testimony involving Petitioner was presented to the jury.

In the issue in question, the testimony of Agent Rivera was being presented to the jury regarding the hierarchy of the drug points and the code words used by all the members of the conspiracy. As the testimony proceeded, Agent Rivera was questioned whether he could identify Petitioner and

---

[3] This calculation is based on the pretence that Petitioner would have received his acceptance of responsibility with a minimum mandatory of 120 months.

select him from the list of defendant's that were on trial.    Agent Rivera was able to identify

Petitioner as "Eric el Tapicero" and was able to point to Petitioner so the Jury could identify him.

At that stage after the Agent was testifying for approximately 30 minutes, it was  discovered that

Petitioner's attorney was not present and that Petitioner was unrepresented during this critical portion

of the trial.  At a side bar the following colloquy was presented:

> Mr. Dolz:  We just realized that since Peter Diaz is not here there is one defendant without a
> lawyer.

*Id.* (Transcript August 7, 2003 pg. 223)

The Government attempted to suggest that Mr. Blanco was representing Petitioner, however, the

record of this case established otherwise.

> Ms Feldman: Mr. Blanco
>
> The Court: Wait a minute.  Yes, he does. Yes, Mr. Diaz yesterday introduced his two clients to
> the jury represented himself which he was very proud to do it and by Mr. Jose Blanco, professor
> and lawyer, Jose Blanco and Mr. Marcos De La Villa.  So, he is represented by counsel here
> according to Mr. Diaz.
>
> Mr. Morales: You Honor, *I queried Mr. Blanco and he told me that he only represents one of*
> *those two persons.*  That is why we decided to come forward.
>
> The Court: That is not what Mr. Diaz said yesterday.
>
> Mr. Blanco: *I filed a motion representing Mr. Clavel.  I can at this moment assume the*
> *representation of Mr. Ofray Campos as well.*

*Id.* (Transcript August 7, 2003 pg. 223)

At the stage when all the incriminating evidence against Petitioner was being offered along with

the direct identification of Petitioner to the jury, Petitioner's constitutional right to be represented by

counsel at all stages of the proceedings were violated.  It was not until Attorney Blanco assumed the

representation of Petitioner, there was no representation of Petitioner and no attorney guarding

Petitioner's rights. It was not until 25 minutes after the testimony against Petitioner had begun that

Mr. Blanco, from that *"moment assume[d] the responsibility of Mr. Ofray Campos as well."* *Id.*

(Transcript August 7, 2003 pg. 223) The mere fact that the testimony was explicitly against

Petitioner, warrants substantial prejudice, although none is required. In fact, a careful reading of the Supreme Court's opinions in *Strickland* and *United States v. Cronic,* 466 U.S. 648, 104 S.Ct. 2039, 80 L.Ed.2d 657 (1984), raises substantial doubt as to whether the Court intended to require a defendant to prove prejudice in Sixth Amendment cases such as this one, where the ineffectiveness at issue is the *absence of counsel during a critical stage of the defendant's trial.* In *Strickland,* for example, the Court discussed and distinguished various "Sixth Amendment contexts" in which prejudice to the defendant is legally presumed. *See* 104 S.Ct. at 2067; *Dillon v. Duckworth,* 751 F.2d 895, 898 n. 2 (7th Cir. 1984). The latter situations include cases of "state interference with counsel's assistance," and, most pertinently, cases involving "[a]ctual or constructive denial of the assistance of counsel altogether." *Strickland,* 104 S.Ct. at 2067. Relying in part on the analysis in *Cronic* that is discussed below, the Court in *Strickland* distinguished these latter circumstances on the grounds that prejudice to the defendant "is so likely that case by case inquiry into prejudice is not worth the cost," and that they "involve impairments of the Sixth Amendment right that are easy to identify and, for that reason and because the prosecution is directly responsible, easy for the government to prevent." *Id.* With respect to the kinds of errors by defense counsel that would normally form a basis for an ineffective assistance claim, on the other hand, the "government is not responsible for, and hence not able to prevent" them, they "come in an infinite variety and are as likely to be utterly harmless in a particular case as they are to be prejudicial," and they cannot "be defined with sufficient precision to inform defense attorneys correctly just what conduct to avoid." *Id.*

The Court elaborated further on the role of prejudice in resolving various kinds of Sixth Amendment claims in *United States v. Cronic,* 104 S.Ct. at 2046-48, which was decided on the same day as *Strickland.* The opinion in *Cronic* provides that of the various "circumstances that are so likely to prejudice the accused that the cost of litigating their effect in a particular case is unjustified," the "[m]ost obvious ... is the complete denial of counsel." *Id.* at 2047.

In this case, there was a total lack of representation in violation of Petitioner's constitutional rights requiring a remand of his conviction. During the critical moments of the trial when Agent Rivera was presenting the detailed drug trafficking testimony involving Petitioner, his interests were not being properly represented.   There was no defense advocacy that was representing Petitioner's interest. *See, Siverson v. O'Leary,* 764 F.2d 1208 (7th Cir. 1985)(a defendant need not affirmatively prove prejudice under the second prong of the *Strickland* test in order to establish a Sixth Amendment violation based on the lack of defense counsel's assistance at a critical stage of the criminal proceedings.)

There is no justification whatsoever that can be presented why Petitioner was not represented by counsel during the critical stage of the proceeding as guaranteed by the Sixth Amendment. Accordingly, the vacating of Petitioner's conviction is mandated due to the total deprivation of counsel during a critical section of the trial.

## COUNSEL RENDERED INEFFECTIVE ASSISTANCE WHEN HE PURPOSELY VIOLATED PETITIONER'S FIFTH AMENDMENT RIGHT TO TESTIFY IN HIS DEFENSE

Petitioner presents that during the month long trial of this case, he had on several instances advised counsel that he wished to testify in his defense.  Petitioner had reviewed the testimony that he would present, and had discussed on several occasions with counsel his desire to present to the jury his non-involvement in the case which was consistent with the trial strategy that had been presented by counsel during the complete trial.

In support of his position, Petitioner refers the court to the opening arguments of the case and several sections during the trial where counsel informed the jury and the court that Petitioner would testify in his defense:

> Mr. Diaz: Heriberto Ofray Campos at this moment will talk you to please listen at the evidence, to please understand that he nothing to do with any drug conspiracy and at some point and that is something that will put him in risk of being cross examined by the government *but at some point Heriberto will come up, sit here and will explain to you his case, he will explain to you the truth and he will want you to see what he has to say about this case.*

11

*Id.* Opening Statement, Tr. at pg. 189

> The Court: You say that Mr. Jose Blanco is co-counsel with you in the case of Mr. Heriberto Ofray-Campos.

> Mr. Diaz:    No, to Pedro Diaz-Clavell, I am sorry and Marcos de la Villa in the case of Heriberto Ofray-Campos. We have had the opportunity to visit our client, Heriberto Ofray-Campos, with Marcos de la Villa. Marcos de la Villa has had the opportunity to talk to Heriberto Ofray-Campos also and Pedro Diaz-Clavell has been meeting intensely with Mr. Jose Blanco discussing the case and going over the case and the fact that there is no possibility of conflict of interest as of this point and in addition to that, *the fact that they are taking the stand will not create a conflict of interest because the positions are not conflicted and they are exactly what we are submitting.*

*Id.* (Trial Tr. September 23, 2003 pg. 2064-65)

In fact, during the trial there was a question whether there was an improper statement made by

the Government on Petitioner's silence. The Court in resolving the matter commented as follows:

> Mr. Dolz: I just advised Mr. Diaz that in my estimation, the prosecutor just made a comment on the silence of a defendant before the jury. He told the jury – she told the jury that if Mr. Diaz wanted, then the defendant could testify as to such and such a thing. I just want to caution and raise the caution at side bar, even Mr. Diaz because the comment have been prompted on account of an argument that ensued between the two of them. I just want to put that on the record.

> Ms. Vargas: Your Honor, my objection –

> The Court: All right, I have it clear, the issue. He is testifying or asking questions. "Don't you remember that your cousin at one time told you this and this" and he is presenting if for the truth of the matter of the subject there and the government is objecting. I am letting that come in because I want to have his answer. He is going to have his answer but what the government attorney *Ms. Vargas stated was as to the ground for the objection to the effect that if he wanted to bring in the truth of the matter of the subject therein, that he could take the stand and testify and he said that he is going to do it. All right.*

> Mr. Dolz: I heard the word, defendant because that could apply to all of us. I just want to caution –

> The Court: No, because the questions have been very specific as to whether Pepe, his cousin, "gave you warnings about drug use." He doesn't remember, "gave you warnings about getting a job." He told him to get a job with a security agency. He doesn't remember and he keeps asking, "don't you remember at that specific time when he told you this" and the objections were coming in, "Hearsay Your Honor. *If he wants to bring it in for the truth of the matter of the subject therein, he is testifying "then the defendant can take the stand"* referring to his client *and then response was "well, he is going to take the stand."* Okay.

Mr. Dolz: I just raised it as to caution,

The Court: Caution but remember also furthermore, if it had been, not prompted by the questions by the government, I would have strenuously chastised the government for it. Okay. *Secondly, if you remember the opening statement of Mr. Diaz, he argued to the jury, proffered to the jury that both his clients were going to take the stand and testify.  So, already the defense of these two defendants* at least of Pepe who is the one now subject of questions and the objections, *he already has made his choice or at least his attorney, through his attorney, he let it be known to the jury that he was going to take the stand and testify* and therefore, all of these questions are preparing the groundwork for him to take the stand later on and say "oh yes, I told him once to not put so much drug in him. Oh yes, I told him to get a security job" and so forth.

*Id.* (Tr. August 29, 2003 pg 1131 – 1133)

At these stages, the court was placed on notice of Petitioner's direct explicit desire to exercise his Fifth Amendment Constitutional right to testify in his defense.  For some unknown reason, counsel overruled Petitioner's Constitutional right which could only be overridden by Petitioner himself, when he made a decision not to allow him to testify notwithstanding, not only the prior statement made to the court regarding the matter, but also regarding the prior agreement that Petitioner had presented to his counsel regarding his desire to testify in his defense.

A reviewing court must not lean too heavily on hindsight: a lawyer's acts and omissions must be judged on the basis of what *he knew, or should have known*,[4] at the time his tactical choices were made and implemented. *Bell v. Cone*, 122 S.Ct. 1843, (2002) [U.S. LEXIS 4020, at \*24 (May 28, 2002); *United States v. Natanel*, 938 F.2d 302, 309 (1st Cir. 1991). Only if, "in light of all the circumstances, the [alleged] acts or omissions of counsel were outside the wide range of professionally competent assistance," can a finding of deficient performance ensue. *Strickland*, 466 U.S. at 690.

The second *Strickland* element ensures that, even if a lawyer's performance is constitutionally unacceptable, relief will be withheld unless the quondam client has demonstrated that "there is a

---

[4] At the very least counsel should have known that Mr. Ofray-Campos was going to testify based on his own statements during the opening statements and during the trial.

reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. *See Smith v. Robbins*, 528 U.S. 259, 285-86 (2000). *In this regard, we caution that, although the possibility of a different outcome must be substantial in order to establish prejudice, it may be less than fifty percent. See Strickland, 466 U.S. at 693 (explaining that "a defendant need not show that counsel's deficient conduct more likely than not altered the outcome in the case")*

Once the jury is ready to hear the testimony of Mr. Ofray-Campos and he fails to address them, they are left with no other interpretation except that the issues are uncontested. This Court must agree that counsel's actions in not allowing Mr. Ofray-Campos to testify although he had advised the Jury that he would is not of the "garden variety" claim of ineffectiveness. This claim strikes at the heart of Mr. Ofray-Campos' Sixth Amendment right to effective assistance of counsel. The complex dynamics of trial engender numerous missteps, but only the most inexcusable will support a finding that counsel's performance was so substandard as to compromise a defendant's Sixth Amendment right to proficient legal representation. *See, e.g., Nix v. Whiteside,* 475 U.S. 157, 164-65 (1986) (*quoting Strickland,* 466 U.S. at 687). When a jury is promised that it will hear Petitioner's story from the his own lips, and then reneges, common sense suggests that the course of trial may be profoundly altered. A broken promise of this magnitude taints both the lawyer who vouchsafed it and the client on whose behalf it was made. *Id. Ouber v. Guarino,* 293 F.3d 19 (1st Cir. 2002)

Had the counsel temporized - he was under no obligation to make an opening statement at all, and, *even if he chose to open, he most assuredly did not have to commit to calling Mr. Ofray-Campos as a witness* there would be no problem. S*ee Phoenix v. Matesanz,* 233 F.3d 77, 85 (1st Cir. 2000)(finding no ineffectiveness where, in the absence of an express promise, counsel chose not to call a potentially important witness.) *Id.*

In fact, if counsel purposely overrode Petitioner's desire to allow him to testify, under some alleged strategy, then the attorney's delayed reaction is sharply reminiscent of the situation in

*Anderson v. Butler*, 858 F.2d 16 (1st Cir. 1988) in which the First Circuit Court of Appeals observed that even "if it was . . . wise [to have the witness testify] because of the damaging collateral evidence, it was inexcusable to have given the matter so little thought at the outset as to have made the opening promise." *Id. Anderson*, 858 F.2d at 18. There was and there is no excuse for counsel's actions.

Mr. Ofray-Campos has clearly shown that counsel's failure to not allowing him to testify has reached the required level of ineffectiveness as enumerated under *Strickland* when viewed in the totality of counsel's statements during opening arguments.

**COUNSEL RENDERED INEFFECTIVE ASSISTANCE BY NOT REQUESTING A MISTRIAL WHEN THE JURY SUBMITTED A NOTE ADVISING THAT IT HAD "UNDESIRABLE UNPLEASANT SITUATIONS WITH THE MARSHALL WHO WAS ACCOMPANYING MR. GUZMAN."**

During the jury deliberations, the jury returned a note that they were having problems with the U.S. Marshall that was assigned to assist the jury. Specifically, the jury requested "that we don't have to deal with him [U.S. Marshall] because he is affecting in our deliberations." *Id.* (Transcript September 29, 2003, pg. 2552)

At that stage, once counsel became aware of the incident[5] had a responsibility to request mistrial be granted or that the jury be questioned since it was apparent that the Constitutional right that Petitioner had to a fair and impartial jury had been violated by the U.S. Marshal that was assigned escort Mr. Guzman.

For some unknown reason, the juror had substantial prejudicial extrinsic contact with a specific U.S. Marshals which caused them, according to the jury's note, "to affect their deliberations." *Id.* At that stage or as soon as counsel became aware of the incident, he had an obligation to request that the matter be investigated or that a mistrial be granted. There is a reasonable probability that the U.S.

---

[5] It is unsure whether counsel was present at that stage or not. It is evident that he was present soon thereafter prior to the jury delivering its verdict.

Marshall might have interjected his thoughts, opinions or extrinsic evidence into the jury's deliberation that caused the jury to issue the note. In fact, the note clearly states:

> "In the short time that we have been deliberating, we have [sic] two undesirable, unpleasant situations with the marshal who is accompanying Mr. Guzman. We request we don't have to deal with him because he is *affecting our deliberations.*"

*Id.* (Transcript September 29, 2003, pg. 2552)

The record before this Court does not clarify whether the U.S. Marshall in question, a Government Agent, was interjecting extrinsic prejudicial information against the defendant's of this case, to the point where the jury requested that they do not want "to have to deal with him because he is affecting our deliberations." The U.S. Marshals exposed the jury to unknown extrinsic information. There were obviously sufficiently prejudicial violations, to cause the jury to complain. That note within itself should have been sufficient for counsel to have requested the jury be questioned and a mistrial demanded. Without inquiring with the jury, the court was unable to determine what extrinsic violations or what concerns were affecting the jury's deliberation with the U.S. Marshal in question. Had counsel requested a mistrial, the Court would have inquired into the jury's concerns and in would have determined the extent of prejudice that Petitioner is suffering. The court was required to determine if the U.S. Marshall's misconduct was so prejudicial as to warrant a new trial.

When a non-frivolous suggestion is made that a jury may be biased or tainted by some incident, the district court must undertake an adequate inquiry to determine whether the alleged incident occurred and if so, whether it was "prejudicial." *United States v. Barone,* 114 F.3d 1284, 1307 (1st Cir.1997)(quoting *United States v. Ortiz-Arrigoítia,* 996 F.2d 436, 442 (1st Cir.1993)). The twin goals of this duty to investigate are "to ascertain whether some taint-producing event actually occurred, and if so, to assess the magnitude of the event and the extent of any resultant prejudice." *Bradshaw,* 281 F.3d at 289. If such an event is present and the potential for prejudice exists, "the court must then consider the extent to which prophylactic measures (such as the discharge of

16

particular jurors or the pronouncement of curative instructions) will suffice to alleviate that prejudice." *Id.* The district court must engage in a "methodologically sound" investigation, *id.* at 291 (quoting *United States v. Boylan,* 898 F.2d 230, 259 (1st Cir.1990)), "to ensure that the parties 'receive[ ] the trial by an unbiased jury to which the Constitution entitles them,'" *id.* at 289-90 (quoting *United States v. Anello,* 765 F.2d 253, 258 (1st Cir.1985) (alteration in original)). Although The First Circuit grants the district court great flexibility in applying a curative procedure in the face of misconduct, it must still be resolved "whether the trial court investigated the claim appropriately and resolved it in a satisfactory manner." *Id.* In this case, the claim was never addressed.

The district court's failure to question all jury members regarding their ability to remain impartial in light of the U.S. Marshall's misconduct was especially important given the challenges in ascertaining what went on in the jury room with the Marshall. As described above, the jury noted that they had "two undesirable, unpleasant situations with the marshal who is accompanying Mr. Guzman. We request we don't have to deal with him because he is affecting our deliberations." The district court acknowledged a problem and immediately contacted the "Supervisory Marshal and told him to get him out of here. I don't want him here anymore." To get me another marshal and I asked the supervisor to get another marshal to accompany Mr. Guzman and he will swear him in when he comes." *Id.* (Tr. at pg. 2553) The Court by its actions, acknowledged that there was sufficient violations, to demand that the U.S. Marshal in question be removed immediately, however failed to inquire on prejudice.

Petitioner presents that the district court's handling of the errant juror's misconduct constituted an abuse of discretion because it compromised the Petitioner's right to have a trial by an unbiased jury.

17

**COUNSEL RENDERED INEFFECTIVE ASSISTANCE WHEN HE FAILED TO OBJECT THAT THE JURY BE ALLOWED TO HAVE ACCESS TO THE PROSECUTORS PERSONAL NOTEBOOK COMPUTER THAT WAS USED DURING THE TRIAL TO HEAR AUDIO TAPES**

Counsel rendered ineffective assistance when he failed to object and allowed the jury to use the prosecutor's personal notebook that was used during the trial to hear audio tapes that were introduced into evidence.  During the trial, the Government presented several audio recordings that were obtained via the use of confidential informants that contained incriminating evidence against Petitioner and his co-defendant's.  The audio CD tapes were introduced into evidence.

After the closing jury instructions were read, the Judge ordered the Court sealed and the windows covered so the jury could have full access to the evidence presented at trial and could have full access to the audio tapes presented at trial.  The Prosecutor offered to leave her personal notebook that she had used during the trial, inside the courtroom so the jury could hear the audio tapes of the case.  The prosecutor's notebook contained all the notes of the case that were used to prosecute the case, including, information that had not been entered into evidence and presented at trial.

Specifically, the following colloquy occurred:

The Court: Motions under Rule 29 are both denied, both before the presentation of the evidence and at this moment for the jury to decide this case, whether they believe the witness or not.  I will send them to deliberate and we will be needing a machine or something for them to play the tape, a CD player.

Ms. Feldman: _I will my laptop down judge._

The Court: They don't know to work it.

Ms. Feldman: If they don't know how to work it –

The Court: Do they have a radio or something?

Ms. Feldman: It does not play the same technology or format. They will need a lap top. _We can bring them a lap top which is my own personal lap top that was used during the whole trial._

The Court: And how are they operate it?

Ms. Feldman: Well, we have to, if they wanted a read back, we would have the agent pull it out.

The Court: The means that I will have to be present in the courtroom?

Ms. Feldman: I believe so judge. We can instruct them how to do it, judge.

The Court: But that does mean I have to bring them out to the courtroom here for them to play?

Ms. Feldman: I believe so, judge, unless, if someone knows hot to do it, then they can do it. We can ask. Either we can provide someone or someone from the jury might be able –

The Court: No, but they can't be here when –

Mr. Diaz: It is not a difficult software. Probably someone in the court knows how –

Ms. Feldman: It takes about five minutes.

*Id.* (Tr. September 29, 2009 pg. 2548-2549)

The Court: .... Any other members of the jury know how to operate a lap top because I am told that it is for you, in order for you to hear the recordings, the tapes, it has to be through a lap top and you will probably have to come in here to the jury room, to the courtroom so what that means is that if ay any time you want to hear the – we will have the lap top made available and we will keep it here and if they want to come into the courtroom, what we will do is, we will lock the courtroom, everybody out, lock the courtroom and we will put some paper in the little windows there, lock the courtroom and then the jury can come in and out into the courtroom and see the evidence rather than having them take it all in there. We will leave and you can take a look at all the evidence here and as soon as we have the lap top, I will you know and we will set up and whoever is going to be courageous enough to work with the lap top, he or she will do so. Remember the first thing you do, you select your foreperson and start your deliberations. You are excused.

The Court: ... If you need to have any of your personal belongings, take them outside. We are going to lock the jury room, the courtroom. Everybody is going to leave. We will leave all the exhibits here. Leave it all here. As soon as everybody leaves, we will lock the courtroom.

*Id.* (Tr. September 29, 2009 pg. 2551-2552)

At this stage, the courtroom was sealed and the jury was allowed to review the evidence, hear the audio tapes and deliberate their verdict with the prosecutors personal laptop in their possession. The court did not inquire nor assure defense counsel that the laptop did not contain any documentation that was not admitted into trial, did not assure the parties involved that the laptop did not have

19

internet access, nor did he attempt to have the CD's formatted so that they may be played in a separated player that did not require the use of the prosecutor's personal laptop.

The Sixth Amendment requires that the jury's verdict must be based solely upon the evidence developed at trial. *See Turner v. Louisiana,* 379 U.S. 466, 472 (1965)("The theory of our system is that the conclusions to be reached in a case will be induced only by evidence and argument in open court, and not by any outside influence, whether of private talk or public print.") *Patterson v. Colorado,* 205 U.S. 454, 462 (1907) (Holmes, J.) ("[E]xposure to extrinsic information deprives a criminal defendant of the protections of the Sixth Amendment, including his right of confrontation, of cross-examination, and of counsel.") *United States v. Santana,* 175 F.3d 57, 65 (1st Cir. 1999) (citations and footnote omitted); *see also id.* (finding that "the judge should not have intervened by allowing the jury to observe [extrinsic evidence] after the close of evidence and without the standard safeguards of a criminal trial" and vacating conviction); *Lacy v. Gardino,* 791 F.2d 980, 983 (1st Cir. 1986)(finding that defendant's Sixth Amendment rights to confrontation and cross-examination were violated when juror peeled tape off exhibits unmasking information concerning defendant's prior criminal record); *United States v. Hans,* 738 F.2d 88, 93 (3rd Cir. 1984)(trial court committed reversible error by granting jury's request to examine objects not in evidence, after deliberations had begun).    As the record currently stands before this Court, there is absolutely no way to determine that the laptop used by the jury, belonging to the prosecutor was not full of documentation, notes, videos, pictures or extrinsic information that was never presented to the jury for their consideration. In *Turner v. Louisiana,* 379 U.S. 466, 85 S.Ct. 546, 13 L.Ed.2d 424 (1965), the Supreme Court stated: "In the constitutional sense, trial by jury in a criminal case necessarily implies at the very least that the 'evidence developed' against a defendant shall come from the witness stand in a public courtroom where there is full judicial protection of the defendant's right of confrontation, of cross-examination, and of counsel." *Id.* at 472-73, 85 S.Ct. at 549-50. *See also Parker v. Gladden,* 385 U.S. 363, 364-65, 87 S.Ct. 468, 470-71, 17 L.Ed.2d 420 (1966). Jury exposure to facts not admitted during

trial violates the sixth amendment right to trial by jury by permitting evidence to reach the jury which has not been subjected to confrontation or cross-examination and to which counsel has not had the opportunity to object or request a curative instruction. *Gibson v. Clanon,* 633 F.2d 851, 854 (9th Cir.1980), *cert. denied,* 450 U.S. 1035, 101 S.Ct. 1749, 68 L.Ed.2d 231 (1981); *United States v. Howard,* 506 F.2d 865, 866 (5th Cir.1975).

The jury's exposure during its deliberations to extrinsic information, whatever its source, is an error of constitutional proportions that is grounds for setting aside the verdict. *See United States v. Williams,* 809 F.2d 75, 80-81 (1st Cir.1986); *Lacy v. Gardino,* 791 F.2d 980, 983 (1st Cir.1986); *see also Eslaminia v. White,* 136 F.3d 1234, 1237 (9th Cir.1998); *United States v. Gonzales,* 121 F.3d 928, 944-45 (5th Cir.1997); *United States v. Barnes,* 747 F.2d 246, 250-51 (4th Cir.1984). Such exposure to extrinsic information deprives a criminal defendant of the protections of the Sixth Amendment, including his right of confrontation, of cross-examination, and of counsel. *See Lacy,* 791 F.2d at 983 (citing *Turner v. Louisiana,* 379 U.S. 466, 472-73, 85 S.Ct. 546, 13 L.Ed.2d 424 (1965); *see also United States v. Hans,* 738 F.2d 88, 93 (3rd Cir.1984).

**COUNSEL RENDERED INEFFECTIVE ASSISTANCE WHEN HE FAILED TO REQUEST A MISTRIAL WHEN IT BECAME EVIDENT THAT PETITIONER WAS NOT PRESENT DURING THE ANSWERING OF SEVERAL JURY NOTES IN VIOLATION OF FEDERAL RULES OF CRIMINAL PROCEDURE RULE 43**

During the trial, the jury received final instructions and began their deliberations. The District Court told both prosecutors and defense counsel that if the court received a note from the jury, it would notify counsel and that the counsels are required to arrive within ten minutes after being notified. The judge explicitly warned counsel that if they failed to appear within the ten minutes of the notification, they will respond to the jury's note without input from anyone who was absent. (Tr. September 29, 2003 pg. 2549)

The record indicates that the court subsequently received four jury notes, including the final note which stated that the jury had reached a verdict. All the notes were addressed in violation of the

21

Federal Rules of Criminal Procedure Rule 43 by the District Court when they were addressed without the benefit of Petitioner's presence in the courtroom. Especially, Note # 2 addressed whether the additional conspirators charged in the indictment were incarcerated. The District Court responded:

> "The question you posed, those that are imprisoned, that is the others in the indictment, are they in jail for conspiracy? The answer is yes. S/ Juan M. Perez-Jimenez, U.S.D.J. 09-29-03"

Although the First Circuit Court of Appeals reached a conclusion that Petitioner cannot establish prejudice as a result of the judge answering the note to the jury in an improper fashion, the First Circuit never addressed whether counsel was ineffective in failing to have requested that Petitioner be actually present as required per Rule 43 of the Federal Rules of Criminal Procedure during all stages of the proceedings. A careful review of the trial transcripts establishes that the court, *in chambers,* presented the following colloquy:

> The Court:    I received a note from the jury. The note was received at 5:56. Right now it is 6:20. The attorneys were notified. *They are not here yet except for the attorneys for the government,* so, I instructed the attorneys, when I receive a note I will call them and if they are not here within ten minutes I will proceed to answer the question without the benefit of their input. (Tr. September 29, 2003 pg. 2552)

Clearly, the trial transcripts establish that Petitioner was not present during the time that the judge began answering the notes for the jury's consideration. Although the transcript are unclear and at a certain stage it establishes that it was a possibility that one of the defense attorneys was present, it does not clearly establish that Petitioner was present and was able to confer with his counsel prior to the judge sending the note back to the jury for their consideration. The Federal Rules of Criminal Procedure Rule 43 clearly established that:

Rule 43. Defendant's Presence

(a)  when required - unless this rule, Rule 5 or Rule 10 provides otherwise, the defendant *must* be present at:

(1) the initial appearance, the initial arraignment, and the plea;

(2) every trial stage, including jury empanelment and the return of the jury verdict; and

(3) sentencing.

22

*Id.* Federal Rules of Criminal Procedure Rule 43

The courts have clearly established that a judge in response to a note from the jury is a stage of trial at which a criminal defendant has a right to be present. See *United States v. Degraffenried,* 339 F.3d 576 (7th Cir. 2003). The courts have held that it is harmless error if it *does not* affect "a substantial right." The absence of a stage of a trial is harmless if the issue involved is not one "in which counsel will be likely to consult with the defendant" or which the defendant "if consulted, will be likely to have an answer that would sway the judge." *Quoting United States v. Silverstein,* 732 F.2d 1338 (7th Cir. 1994). In this case, it was rather evident that consultation with Petitioner was required in order to be able to make a proper recommendation to the court. The record does not determine that either counsel or Petitioner were present *at the time* that the judge instructed the jury on the improper response to the Jury Note # 2. Furthermore, coupled with the fact that the United States Marshals have previously interfered with the jury deliberations, it was sufficient within itself so that counsel would have requested a mistrial upon learning that the District Court had not only answered the jury's note without his Petitioner's presence but especially after learning that the District Court had answered the juror's note not only alleging to the U.S. Marshals interfering with the jury, but that also answered the jury's note regarding the status of the 37 co-conspirators that were already incarcerated without Petitioner's presence at the time.

The right to be present pursuant to the Confrontation Clause has been referred to as a "trial right," and is less broad than the right afforded by the Due Process Clause or Rule 43. *United States v. Boyd,* 131 F.3d 951, 954 (11th Cir.1997) The Supreme Court has "emphasized that a primary interest secured by the Confrontation Clause is the right of cross-examination." *Kentucky v. Stincer,* 482 U.S. 730, 736, 107 S.Ct. 2658, 2662, 96 L.Ed.2d 631 (1987) (citation, quotation, and brackets omitted). Thus, this clause has the "functional purpose [of] ensuring a defendant an opportunity for cross-examination." *Id.* at 739, 107 S.Ct. at 2664. Rule 43, Fed. R. Crim. P., also affords a defendant the

23

right to be present at every stage of his trial. That right is grounded in the Confrontation Clause of the Sixth Amendment. *Illinois v. Allen,* 397 U.S. 337, 338, 90 S.Ct. 1057, 1058, 25 L.Ed.2d 353 (1970). Further, the right to be present is protected by the Due Process Clause of the Fifth Amendment even during those phases of the trial when the defendant is not specifically confronting witnesses or evidence against him. *Kentucky v. Stincer,* 482 U.S. 730, 745, 107 S.Ct. 2658, 2667, 96 L.Ed. 2d 631 (1987); *United States v. Gagnon,* 470 U.S. 522, 105 S.Ct. 1482, 84 L.Ed. 2d 486(1985); *United States v. Boyd,* 131 F. 3d 951, 953 (11th Cir. 1997); *United States v. Davis,* 61 F.3d 291, 301 (5th Cir. 1995).

There is no justifiable reason why the United States Marshall's Service would not have Petitioner present during this critical portion of the trial, nor why counsel did not advise the Court of the oversight. Nevertheless, the Court must agree that failure to have Petitioner present during the required portions of the trial, will require at a minimum the granting of an evidentiary hearing to determine the extent of prejudice that is suffered by the United States Marshall's Service and counsel's oversight.

## THE CUMULATIVE IMPACT OF TRIAL COUNSELS ERRORS ADDRESSED HEREIN REQUIRES VACATING PETITIONER'S CONVICTION AND/OR AN EVIDENTIARY HEARING

Petitioner contends that each of the errors addressed herein was sufficiently prejudicial to require a reversal of his conviction. However, should the court disagree, then the cumulative effect of these errors deprived Petitioner of fair and just assistance of counsel. "Individual errors, insufficient in themselves to necessitate a new trial, may in the aggregate have a more debilitating effect ... so as to deny due process." *United States v. Fernandez,* 145 F.3d 59, 66 (1st Cir. 1998) *See, e.g., United States v Hands,* 184 F.3d 1322, 1334 (11th Cir. 1999); *United States v. Munoz,* 150 F.3d 401, 418 (5th Cir. 1998), *cert. denied,* 525 U.S. 1112 (1999). The errors here were many, they were all interrelated and their cumulative impact was devastating to Petitioner's right to due process and a clear violation of her Sixth Amendment right to effective assistance of counsel.

Accordingly, Petitioner respectfully prays this Honorable Court will grant an evidentiary hearing on the issues presented herein. See *Virgin Islands v. Weatherwax*, 20 F.3d 572, 573 (3rd Cir. 1994)(petitioner entitled to evidentiary hearing on ineffective assistance of counsel claim where facts viewed in light most favorable to petitioner would entitle him to relief)

## CONCLUSION

**WHEREFORE** MOVANT Mr. Ofray-Campos respectfully asks this Honorable Court to: (A) **ORDER** an evidentiary hearing as set forth in his § 2255 motion; and, upon proof of his allegations herein, **ORDER** that Mr. Ofray-Campos's conviction be **VACATED**.

Done this 28 , day of December 2009

Respectfully submitted,

Heriberto Ofray-Campos
Reg. 23519-069
FCI Fort Dix
P.O. Box 2000
Fort Dix, NJ 08640

## CERTIFICATE OF SERVICE

I HERBY DO CERTIFY that a true and correct copy of this pleading that was prepared with assistance of counsel, was mailed to: United States Attorneys Office, Chardon Office Tower Suite # 1201, 350 Carlos Chardon Avenue, San Juan, PR 00918 sufficient First Class Postage.

Done this 28 , day of December 2009

I hereby do certify that pursuant to Penalty of Perjury Title 28 U.S.C. § 1746 that on this 28 day of December 2009 I signed and mailed this document via the Federal Bureau of Prisons' Legal Mail System.

Respectfully submitted,

Heriberto Ofray-Campos
Reg. 23519-069
FCI Fort Dix
P.O. Box 2000
Fort Dix, NJ 08640

25

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO**

HERIBERTO OFRAY-CAMPOS
    Petitioner,

vs.

                Docket No.: 09-2190
                         02-393

UNITED STATES OF AMERICA
    Respondent.
_____/

**NOTICE OF FILING CORRECTED TITLE 28 U.S.C. § 2255
AS PER COURT'S DIRECTIVE**

    COMES NOW, Petitioner, Heriberto Ofray-Campos, with this Notice of Filing Corrected Title 28 U.S.C. § 2255 as per the Court's Directive with the request that the Memorandum of Law be condensed to 25 pages.

    Done this 28 , day of December 2009

                                 Respectfully submitted,

                                 Heriberto Ofray-Campos
                                 Reg. 23519-069
                                 FCI Fort Dix
                                 P.O. Box 2000
                                 Fort Dix, NJ  08640

## CERTIFICATE OF SERVICE

I HERBY DO CERTIFY that a true and correct copy of this pleading prepared with the assistance of counsel was mailed to: United States Attorneys Office, Chardon Office Tower Suite # 1201, 350 Carlos Chardon Avenue, San Juan, PR 00918 sufficient First Class Postage.

Done this _28_, day of December 2009

I hereby do certify that pursuant to Penalty of Perjury Title 28 U.S.C. § 1746 that on this _28_ day of December 2009 I signed and mailed this document via the Federal Bureau of Prisons' Legal Mail System.

Respectfully submitted,

Heriberto Ofray-Campos
Reg. 23519-069
FCI Fort Dix
P.O. Box 2000
Fort Dix, NJ  08640

2



Heriberto Ofray-Campos
#23519-069
FCI Fort Dix
P.O. Box 2000
Ft Dix, NJ
        08640

CERTIFIED MAIL

7008 3230 0002 7202 6440

RECEIVED & FILED
2010 JAN 15      58
CLERK'S OFFICE
U.S. DISTRICT COURT
SAN JUAN

To:  Clerk of the Court
     U.S. District Court
     Clemente Ruiz-Nazario U.S. Courthouse
     + Federico Degetau Federal Building
     150 Carlos Chardon Street
     Hato Rey,
          PUERTO RICO
               00918