**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF PUERTO RICO**

**HERIBERTO OFRAY-CAMPOS**
Petitioner

         v.                               **CIVIL NO.      09-2190 (PG)**
                                             **(Related to Cr. No. 02-393 (PG))**

**UNITED STATES OF AMERICA**
Respondent

---

**UNITED STATES' RESPONSE IN OPPOSITION TO PETITIONER'S MOTION**
**TO VACATE, SET ASIDE, OR CORRECT SENTENCE**

**TO THE HONORABLE COURT:**

     **COMES NOW**, the United States of America through the undersigned attorneys and to this Honorable Court it is very respectfully alleged and prayed as follows:

     On November 4, 2009, Petitioner, Heriberto Ofray-Campos, placed on the prison's legal mail a petition to vacate, set aside, or correct sentence, with an attached memorandum of law, and an unsworn declaration under penalty of perjury.[1] (D.E. 1). The petition was stricken from the record because it exceeded a twenty five (25) page limit. (D.E. 3). Thereafter, on January 13, 2010, a corrected memorandum of law, within the twenty five (25) page limit, was entered in the court's docket.[2] (D.E. 4).

     Ofray-Campos raises multiple claims where he asserts that trial counsel was ineffective. He alleges that counsel: **1)** failed to explain the operation of the sentencing guidelines "thus rendering

---

1.     The initial memorandum with the attached unsworn declaration totaled fifty six (56) pages.

2.     The corrected memorandum failed to include the unsworn declaration. (D.E. 1-2, pp. 53-56).

Petitioner's decision to proceed to trial involuntary" (D.E. 4, pp. 5-8); **2**) was not present at all stages of the proceedings during trial[3] (D.E. 4, pp. 8-11); **3**) did not allow Petitioner to testify (D.E. 4, pp. 11-15); **4**) failed to request mistrial when jury note was submitted that it was having problems with the court security officer (D.E. 4, pp. 15-17); **5**) failed to object to the jury use of the prosecutor's notebook to hear audiotapes (D.E. 4, pp. 18-21); **6**) failed to request a mistrial when court addressed jury notes in the absence of counsel (D.E. 4, pp. 21-24); and **7**) cumulatively incurred in a number of errors which require that the petition be granted.  (D.E. 4, pp. 24-25).  Ofray-Campos then requests an evidentiary hearing.[4]  (D.E. 4, p. 25).

Petitioner's allegations lack merit.  There was no ineffective assistance of counsel.  Ofray-Campos was properly represented throughout all the stages of his prosecution.  Furthermore, counsel was not ineffective for not placing Petitioner on the stand to testify on his own behalf.  Additionally, the allegations pertaining to jury notes were raised and settled on direct appeal, and are therefore foreclosed on collateral review.  *Murchu v. United States*, 926 F.2d 50, 55 (1st Cir.1991) (issues disposed of in a prior appeal cannot be re-litigated by way of a 28 U.S.C. §2255 motion).  Therefore, the alleged cumulative effect of counsel's errors is non-existent.  Accordingly, Ofray-Campos' twofold request to: 1) be allowed to conduct discovery; and 2) have the court schedule an evidentiary hearing, should both be denied.

---

3.    Ofray Campos refers to the fact that on August 8, 2003, the fourth day of jury trial, Agent Ricardo Rivera Colón was called again to the stand, and continued with his overview testimony that had commenced the previous day.  Counsel arrived after the initial testimony when the witness had already identified Ofray-Campos as Eric el Tapicero for the record.

4.    In the initial petition, Ofray-Campos expressed that the purpose of the evidentiary hearing was to present: 1) his own testimony; 2) testimony of prior attorneys; 3) additional evidence; and 4) legal argument, and upon proof of his allegations that conviction be vacated and that "he be allowed to re-submit his plea of guilt..." (D.E. 1-2, pp. 4-5).  Petitioner also requested to be allowed to conduct discovery.  (D.E. 1-2, pp. 5-6).

## Background

On October 4, 2002, the Grand Jury returned a two (2) count indictment charging Ofray-Campos and forty two (42) co-defendants in Criminal No. 02-393 (PG).  Count One charged a conspiracy to possess with intent to distribute an excess of five (5) kilograms of cocaine, fifty (50) or more grams of crack, and one (1) or more kilograms of heroin, in violation of 21 U.S.C. 841(a)(1) and 846, while Count Two was a narcotics forfeiture count.  (D.E. 1, 2).

On August 5, 2003, a thirty one (31) day jury trial commenced involving Ofray-Campos and four (4) co-defendants.  On September 29, 2003, the jury found all the co-defendants guilty, and indicated by special verdict form, that the charged conspiracy involved the threshold amounts of the narcotics described in the Indictment.  (D.E. 721).

On February 28, 2005, the Sentencing Hearing was called.  (D.E. 1291).  Ofray-Campos was sentenced to a term of imprisonment of two hundred (200) months, followed by a supervised release term of five (5) years.  (S.H. Tr., p. 18).

The conviction and sentence of Ofray-Campos were affirmed on appeal. *United States v. Ofray-Campos*, 534 F.3d 1 (1st Cir. 2008), *cert denied Ofray-Campos v. United States*, 555 U.S. 1020 (November 10, 2008).  Since Judgment became final on November 10, 2008, pursuant to the Antiterrorism and Effective Death Penalty Act of 1996, Ofray-Campos had until November 10, 2009, to file his motion to vacate set aside or correct sentence, pursuant to 28 U.S.C. § 2255.  Therefore, the petition placed on the prison mail on November 4, 2009, is timely.  (D.E. 1732).

## Discussion

### Ineffective assistance

Claims of ineffective assistance of counsel are generally measured by the standard of

3

*Strickland v. Washington,* 466 U.S. 668 (1984). Under *Strickland,* a petitioner must be able to show that his counsel was deficient and that the deficiency prejudiced him to the extent that a fair trial could not be had.   *Strickland,* 466 U.S. at 687. Deficiency is judged by an objective reasonableness standard, with great deference given to counsel and a presumption that the disputed conduct is reasonable. *Id.* at 687-688.   The prejudice element requires a petitioner to prove that absent the disputed conduct of counsel, the outcome would have been both different and more favorable. *Id*. at 694–695.   Under *Strickland,* a petitioner must establish both deficiency and prejudice prongs to be entitled to habeas relief.   The failure to establish either deficient performance or prejudice makes it unnecessary to examine the other prong. *United States v. Seyfert,* 67 F.3d 544, 547 (5th Cir.1995).

Ofray-Campos asserts that his decision to proceed to trial was involuntary because it was based on counsel's failure to explain the implications of the federal sentencing guidelines to his case. Ofray-Campos asserts in his memorandum and supporting affidavit that he would have pleaded guilty to the charged offenses and received a sentence reduction for acceptance of responsibility pursuant to §3E1.1 U.S.S.G. if counsel had explained how the guidelines would be used to calculate his sentence. (D.E. 1-2, pp. 53-54, pars. 3-7, 9).

**Sentencing Guidelines (Ground One; D.E. 4, pp. 5-8)**

Ofray Campos asserts that his decision to proceed to trial was involuntary because it was based on counsel's failure to explain the implications of the federal sentencing guidelines and applicable law before trial.   Petitioner, has made no adequate showing that he would have pled guilty.   This claim fails.

Ofray-Campos alleges in the memorandum and supporting affidavit that he would have pleaded guilty to the charged offenses and received a sentence reduction for acceptance of

responsibility pursuant to U.S.S .G. §3E1.1, if counsel had explained how the guidelines would be used to calculate his sentence.  (D.E. 4, pp. 7-8; D.E. 1-2, p. 54, par. 9).  Ofray-Campos maintains that a plea of guilty would have resulted in a guideline range of thirty one (31), with a minimum sentencing exposure  of one hundred eight (108) months.[5] *Id*.

Ofray-Campos' asserted desire to plead guilty and receive the benefit of the two-point reduction is not credible in light of his unwillingness to admit to his role in the offense conduct, whether to his own attorney, the probation officer, or to the trial court at sentencing.

It should be noted that the presentence report clearly reflects that  on November 5, 2003, Ofray-Campos was interviewed by the probation officer.  There, he denied

 participating in the offense of conviction, and maintained his innocence.  (PSR p.6, par. 12).

Furthermore, it is highly improbable that the district court could have accepted Ofray-Campos' guilty plea.  Before accepting a guilty plea, Rule 11 of the Federal Rules of Criminal Procedure requires that the court determine that the plea is voluntary and that there is a factual basis for the plea. Fed.R.Crim.P. 1 1(b)(2) and (3).  This typically requires an admission of guilt.  *North Carolina v. Alford,* 400 U.S. 25, 38 & n. 10 (1970) (upholding guilty plea by a defendant who maintained his innocence but sought to avoid death penalty in murder case).

Ofray-Campos relies heavily on *United States v. McCoy,* 215 F.3d 102 (D.C.Cir. 2000), citing that case for the proposition that the lack of familiarity with the relevant portions of the

---

5.     Ofray-Campos errs in his computations.  At sentencing, Petitioner was held responsible for at least fifteen (15) but less than fifty (50) kilograms of cocaine, for a base offense level of thirty four (34).  (S.H. Tr., p. 17).  He also fails to acknowledge the two (2) point enhancement for possession of firearms imposed at sentencing.  *Id*.  Under these circumstances, a total adjusted guideline range of thirty one (31) was not feasible for two reasons. First, he fails to include the two (2) level enhancement of the firearm, and secondly a guilty plea would not entitle him to an automatic three (3) level reduction for acceptance of responsibility.

Sentencing Guidelines led him to proceed to trial rather than plead guilty.[6]  (D.E. 4, pp. 6-7). Petitioner's argument is without merit, as he failed to admit guilt.

Even in the instant collateral proceedings Ofray-Campos has failed to clearly admit responsibility.  The relevant time frame in which Petitioner would have been required to make a satisfactory admission of guilt was at the time of his trial.  Ofray-Campos denied involvement in a conspiracy. *United States v. Gonzalez-Velez*, 466 F.3d 27, 35 (1st Cir. 2006) (elements of a conspiracy are: 1) the existence of a conspiracy; 2) the defendant's knowledge of the conspiracy; and 3) the defendant's voluntary participation in the conspiracy).

Stated otherwise, there is nothing in the record to indicate that Petitioner's perception of his involvement in the charged offense would have been sufficient to support a guilty plea to the charges in the indictment.  The assertion that he would have pleaded guilty may evidence post sentencing remorse and disappointment in the sentence imposed, rather than an accurate depiction of Ofray-Campos' state of mind at the relevant time.[7]

**Confrontation rights (Ground Two; D.E. 4, pp. 8-11)**

Ofray- Campos claims that counsel was not present when the first witness for the

---

6.   In a telephone conversation held with trial counsel, On June 25, 2002, counsel Peter Díaz-Santiago stated that Ofray-Campos held conversations with three (3) different attorneys that explained the operation of the Sentencing Guidelines within the plea offers made by the government, versus the sentencing exposure if convicted after trial.  Ofray-Campos rejected the plea offers and opted for trial.   The attorneys that provided guidelines advice and estimates to Ofray-Campos were Peter Díaz-Santiago, José F. Blanco-Torres and Marcos L. De-La-Villa.

7.   Pursuant to trial counsel, Peter Díaz-Santiago, Ofray-Campos' expectations were for a government's plea offer with a recommended imprisonment term of sixty (60) months. When the expected offer did not materialize, Petitioner rejected the government's offer, which although generous, was for a significantly higher term of immurement.  (See Attachment 1)

6

government, Agent Ricardo Rivera-Colón, identified him as "Eric el Tapicero".  Petitioner avers that the witness had been testifying for approximately thirty (30) minutes, when it was discovered that his counsel was not present at that critical stage of trial.  Petitioner concludes that as there is no justification for counsel's action, conviction has to be vacated.  The argument lacks merit.

On August 8, 2003, the fourth day of jury trial, the direct examination of Agent Rivera-Colón by Assistant United States Attorney, Irene Feldman, continued.

> Q    Now getting to the next drug point in San Felipe.  What was the name of that drug point or if there were more than the names of those drug points?
>
> A    Well, there are several drug points there but the one that concerns us is the one called Bar Copa Rota or Copa Deportiva.
>
> Q    What types of drug points were they or if it was one and the same, please clarify?
>
> A    Yes through the investigation that we conducted in the FBI, this drug point was run by Heriberto Ofray Campos known as Eric el Tapicero and this drug point was not for the sale of little small bags with small amounts of drugs but rather large quantities of drugs.  Through the investigation that we conducted, the runner of Heriberto was Pedro J. Diaz Clavel.
>
> Q    Sir do you see either of these gentlemen here today in court?
>
> A    Yes.
>
> Q    Would you please identify them for the ladies and gentlemen of the jury.
>
> A    Again, facing, as I face them, the first one to my right and the third from right to left.  Pedro J. Diaz Clavel is the first one and the third one is Heriberto Ofray Campos.
>
> Q    Now, sir, you mentioned the term runner, I believe.  Is that correct?
>
> A    Correct.

(T.Tr., 8/08/2003, pp. 236-237).

At that moment, counsel Francisco Dolz-Sánchez requested permission to approach the

7

bench and advised the court that counsel for Ofray-Campos was not present in court.  At that moment counsel Blanco offered to assume the representation of Ofray-Campos, until the arrival of counsel Díaz-Santiago.  (T.Tr., 8/08/2003, pp. 237-238).  The court expressed it dissatisfaction with counsel's late appearance.

> THE COURT:        Which by the way, he is 25 minutes late and he is not going
>                   to control the calendar of the court. ...

(T.Tr., 8/08/2003, p. 238)

The record also reflects that on the fourth day of jury trial (8/08 2003), the proceedings started late, therefore contrary to Petitioner's assertion, Agent Ricardo Rivera-Colón, had not testified for thirty (30) minutes.  Another attorney, Frank Inserni, presented excuses to the court for his late arrival.  The court stated that although he arrived late, proceedings had not commenced.

> MR. INSERNI:      Your Honor, I apologize for coming late.  I stopped because
>                   there was an accident.
>
> THE COURT:        Counsel don't worry.  I am not blaming for go (sic) anything.
>
> MR. INSERNI:      I am telling you why I am late.
>
> THE COURT:        You were ten minutes late but we had not yet started.

(T.Tr., 8/08/2003, p. 239)

Notwithstanding, Ofray-Campos was not without representation, as the appearances on the record for the fourth day of jury trial, (8/08/ 2003, p. 232) reflects the presence of attorneys Peter Díaz-Santiago, José Blanco and Marcos De La Villa-Rodríguez.  Although petitioner fails to acknowledge the fact, the record reflects that attorneys  Díaz-Santiago, and Marcos De La Villa, were jointly representing Ofray-Campos.

> MR. DIAZ:         Yes, Your Honor.  Your Honor, in this particular case, we had
>                   a Foster Hearing before Magistrate/Judge Aida Delgado in

which she was very specific as to all possible conflicts of that could have arisen in the process.   Based on those recommendations we have discussed this case intensely with both defendants and they are happy with the fact that I am representing both of them.   To take another precautionary measure, we included in the defense team Attorneys Marcos De La Villa and Attorney Joe Blanco, José Blanco.   José Blanco is representing only Pedro Díaz-Clavell and Marcos De La Villa is representing only Heriberto Ofray Campos. The reason for this was to make sure that if at any time a conflict could arise in the process, they could continue with the representation without interrupting the case.

THE COURT:         You say that Mr. José Blanco is co-counsel with you in the case of Heriberto Ofray Campos?

MR. DIAZ:    Yes.

THE COURT:         You say that Mr. José Blanco is co-counsel with you in the case of Heriberto Ofray Campos?

MR. DIAZ:          No, to Pedro Díaz Clavell, I am sorry and Marcos De La Villa in the case of Heriberto Ofray Campos.   We have had the opportunity to visit our client, Heriberto Ofray Campos, with Marcos De La Villa.   Marcos De La Villa has had the opportunity to talk to Heriberto Ofray Campos also and Pedro Díaz Clavell has been meeting intensely with Mr. José Blanco discussing the case and going over the case and the fact is there is no possibility of conflict of interest as to this point and in addition to that, the fact that they are taking the stand will not create a conflict of interest because their positions are not conflicted and that is exactly what we are submitting. ...

(T.Tr., 9/23/2003, pp. 2063-2065)

Therefore, although attorney Díaz-Santiago may have been fifteen (15) minutes late, not

thirty (30) as stated by Ofray-Campos, Petitioner was also represented by co-counsel, Attorney De

La Villa-Rodríguez.[8]

8.      To minimize the effect that he was in effect represented, in the Unsworn Statement Ofray-Campos claims that he only retained counsel Díaz-Santiago to represent him. (D.E. 1-2, p. 55, par. 14).

Moreover, in addition to being represented by counsel the testimony of Agent Ricardo Rivera was overview testimony, given at the initial stages of a very extensive trial, where the evidence presented against Petitioner was overwhelming. *Ofray-Campos*, 534 F.3d at 26.

Petitioner's claims of ineffective assistance of trial counsel and violation of his Confrontation Clause rights are not persuasive. Therefore, Ofray-Campos' request for relief should be denied.

**Right to testify (Ground 3; D.E. 4, pp. 11-15)**

Ofray-Campos claims that counsel failed to render effective assistance when after announcing to the jury in his opening statement, and repeatedly asserting on the record that Petitioner would testify on his own behalf, failed to allow him to testify. This argument also lacks merit.

Petitioner chooses to ignore the record. Counsel was willing to have Petitioner testify on his own behalf, but was not allowed to do so.

| | |
|---|---|
| Mr. DIAZ: | Yes, but what I am trying to indicate to the Court is that Heriberto Ofray Campos will be testifying about family problems and serious family problems between the witness, Alex Candelario, and himself. |
| THE COURT: | That is the gentleman that lives in the second floor in front of the business? |
| MR. DIAZ: | Yes. |
| THE COURT: | So the report is clear who we are referring to? |
| MR. DIAZ: | Who should include and I am offering this information that should include that Axel Candelario's brother was the husband of Consulo's (sic) husband or of the sister of Heriberto Ofray Campos and he used to bother his wife and for that reason Heriberto Ofray Campos on more than one occasion had to be involved in fights with the brother of Axel Candelario. In addition to that, the brother of Axel Candelario who is right now in federal jail, in a federal penitentiary, is serving a federal sentence, was not paying child support to his daughter with the sister of Heriberto |

10

Ofray Campos and the family of Heriberto Ofray Campos had to go to court to ask for the mother of Axel Candelario to cover the child support and Axel Candelario was also involved in that situation in which they had family discussions and he is admitting that the whole implication of him having the inter dynamic or putting the inter dynamic in the white van on the day of July 14, 2002, was a fabrication put together by Axel Candelario against him based or motivated by these problems. That is basically the problem.

THE COURT:     Based on that proffer, all of this is irrelevant to the issues of this case and I will not admit any testimony from your client because once he sits down he is like any other witness, not just a defendant, he is like any other witness and all of that is irrelevant to the issues of this case. That is my ruling. That is my ruling, counsel.

MR. DIAZ:      One charge in the crime.

THE COURT:     That is an overt act, yes.

MS. FELDMAN:   In addition, Your Honor, counsel for Heriberto Ofray Campos has made allegations for any personal motivation and some hint that one of the agents that is working with the FBI task force, I would ask the Court to exclude any reference or any attempt by counsel to presenting in any malicious testimony concerning Agent Ofray Campos.

MR. DIAZ:      It is made in good faith, Your Honor, and not malicious. If I can put it that way.

THE COURT:     Go on.

MR. DIAZ:      The agent, Irving Ofray is a cousin of my client and my client had to throw out of his business on two occasions the father of Irving Ofray for having problems in the business and going there drunk to talk loud and fight with others.

THE COURT:     And that is all irrelevant, that is all irrelevant. That is not relevant.

MR. DIAZ:      Also evidence of motive of the old investigation because he is the one that is carrying around Angel Lugo Villoda who is

11

the witness that says that my client was dealing with the drugs.

THE COURT:     All of this is irrelevant.  Any family problems that they have, that is all irrelevant in this case and I will not allow the testimony as to that and like any other witness, you tell him that those areas have to be excluded from his testimony.  I don't want him blurting that out because then I we have to take -- I have to take other measures.

MR. DIAZ:     Your Honor, I just want to indicate that we understand that under the Sixth Amendment of the Constitution, the confrontation clause, it is very important that my client be able to present his turn as the defendant's testimony, all of it until possible motive, bias, evidence or motivation that could have led these people to fabricate evidence against him.  That is crucial for the theory of the defense that we are allowed to present evidence of motivation.

THE COURT:     But the problem that you have with that statement, first of all, I don't think there is any fabrication because there are telephone conversations that were had before the drug transaction took place, so, even if they had any motivation to fabricate a case, your client went along with it and he sold and there is testimony here and there is conversation that he sold and that he had delivered drugs to the government agency.

MR. DIAZ:     I am not talking about that.  I am talking about the weapon, Your Honor.

MS. FELDMAN:     Your Honor, I submit that all of ths is double and triple hearsay and family problems is all irrelevant.

THE COURT:     It is all irrelevant.

MR. DIAZ:     Your Honor, Agent Candelario at one point was suspended and has been restated (sic).

THE COURT:     That has nothing to do with this.

MS. FELDMAN:     That is what I wanted to make sure that none of that –

THE COURT:     We cleared that up already when it came to the testimony.

12

| | |
|---|---|
| MS. FELDMAN: | So there is no reference to Agent Irving Ofray and no reference to Candelario and his problems. |
| THE COURT: | Any family problems for motive or for fabrication that is all out. |
| MS. FELDMAN: | Thank you, Your Honor. |
| MR. DIAZ: | We are talking about the defendant as a witness. |
| THE COURT: | I am talking about the defendant as a witness.  That is correct.  All of this irrelevant.  It is all irrelevant.  Okay?  What else? |
| MR. DIAZ: | Your Honor, that we are going to put him on the stand but we just want to make sure that the court understand why we are going to present that evidence and we still believe that he should be allowed to present this evidence under his prospective Sixth Amendment right. |
| THE COURT: | Okay, all right.  My ruling is on the record. |

(T.Tr. 9/24/2003, pp. 2177-2182)

Counsel was not ineffective.  His allegation that he was not allowed to testify are belied by

the record, which reflects that Ofray-Campos opted not to testify.

| | |
|---|---|
| MR. DIAZ-SANTIAGO: | ...When we explained to him that he was precluded from talking anything about the personal problems with witness Alexander Candelario, and when we also told him he was not supposed to testify anything regarding Agent Ofrey (sic), one of the agents that participated in the investigation, and that he was going to testify to the fact that he had problems with his father and he participated in fabricating evidence, then our client said that given the fact that he was not going to be able to testify about that, his testimony was not going to be effective, and that he decided not to take the stand. |

(T.Tr., 9/26/2003, p. 33).

The record clearly depicts that counsel vigorously advocated having Ofray-Campos take the

13

stand to testify on his own behalf, but as an officer of the court counsel Díaz-Santiago had to stand

by the ruling of the court.

Furthermore, in addressing the restrictions placed on Candelaria's cross examination the

Court of Appeals stated that the examination of bias against Ofray-Campos was a relevant fact for

the jury to consider, but that such limitation was harmless.

Although cross examination of Candelaria would indeed have required a certain amount of delving into collateral matter, **the issue of Candelaria's possible bias against Ofray was a relevant fact for the jury to consider in deciding whether to credit Candelaria's testimony.** It was thus error for the trial judge to preclude the defense from attempting to show that there was a familial tie between Candelaria and Ofray, and that bad blood existed between the two men. This was clearly evidence of Candelaria's motive and bias for providing inculpating testimony.

**Any error, however, was harmless, because the jury was confronted with other testimony that established that Ofray sold large quantities of drugs and regularly carried weapons in connection with his role as the operator of several drug points**. Although Ofray's possession of a weapon on July 14, 2002, was an overt act charged in the Indictment, the jury could have chosen to disbelieve all of Candelaria's testimony about the gun possession, and even have disbelieved the testimony of the police officer who discovered the gun in the van, and still found Ofray to be guilty of the charged drug conspiracy.  As discussed above, the Government's proof of Ofray's participation in the charged conspiracy was overwhelming.  This was not a case where the success of the Government's proof turned on the jury's determination of Candelaria's credibility. *Cf.  United States v. Mulinelli–Navas,* 111 F.3d 983, 993 (1st Cir.1997) (finding erroneous limitation of cross examination not harmless where proof of charges relied solely on government witness's testimony and allowing cross examination to proceed could have allowed jury to discredit witness's testimony).  Here, Ofray's theory of the case—urged in cross examination of most of the Government's witnesses, in opening statement, and in closing argument—was that the Government had failed to present credible evidence of any connection between Ofray and Las Avispas.  Ofray's theory of defense, although ultimately unsuccessful, did not suffer as a result of his inability to impeach Candelaria's testimony regarding Ofray's possession of a firearm on a single occasion. *See United States v. Cunan,* 152 F.3d 29, 38 (1st Cir.1998) (finding no error in court's restriction of cross examination where restrictions did not impede assertion of theory of defense).

**In sum, the trial court's decision to limit the cross examination of Candelaria, even if erroneous, was harmless in light of overwhelming evidence of Ofray's guilt**.

*Ofray-Campos*, 534 F.3d at 37-38 (footnotes omitted) (emphasis added).

The issue on the preclusion of the testimony Petitioner wished to present to the jury by taking stand and testifying in his own behalf, was another issue raised and decided on appeal.  The Court of Appeals found it to be harmless.  Ofray-Campos is not entitled to raise the same argument to relitigate it in a §2255 motion. *Berthoff v. United States*, 308 F.3d 124, 127-128 (1st Cir. 2002) (Section 2255 petition cannot be used to litigate matters that were, or could have been, decided on appeal); *United States v. Chiquito,* 526 F.3d 1310, 1311 (10th Cir.2008) (claims raised on direct appeal could not be raised in a §2255 motion).

**Jury Notes (Grounds 4 and 6; D.E. 4, pp. 15-17, 21-24)**

Ofray-Campos raises two claims pertaining to jury notes.  First he asserts that counsel failed to request a mistrial when jury submitted a note that the jury was having problems with the court security officer.  (D.E. 4, pp. 15-17).  His second claim is that trial counsel failed to request a mistrial when the court addressed jury notes in the absence of counsel.

Four (4) jury notes were delivered to the trial court.  On direct appeal the Court centered its attention on note number two.  There, the Court stated:

> The record indicates that the court subsequently received four jury notes, including the final note, which stated that the jury had reached a verdict.  Two notes, the contents of which are irrelevant for purposes of this appeal, were marked as "Jury Note # 1" and "Jury Note # 3", and were signed by the foreperson, respectively, at 5:55 p.m. and 6:00 p.m. The note which concerns us was marked as "Juror Note # 2Note # 2"), and was signed by the foreperson at 6:15 p.m.  Note # 2 was written in Spanish and headed with the single, underlined word "Duda," which is translated as "Doubt."  The district court responded to the note, in English, as follows:
> Dear Jury:
>
> The question you posed, those that are imprisoned, that is the others in the Indictment, are they in jail for a conspiracy?  The answer is yes. s/Juan M. Pérez–Giménez, U.S.D.J., 9–29–03.

This written answer was then sent to the jury.  The final note from the jury, stating that the jury had reached a verdict, was signed by the foreperson at 7:15 p.m.

*Ofray-Campos*, 534 F.3d at 15-16.

Ultimately, the Court determined that the response to the jury note was prejudicial, because it exposed the jury to extrinsic evidence.  *Ofray Campos*, 534 F.3d at 20, 23, 24.  However, in relation to Ofray-Campos, the Court concluded that the strength of the government's case was so great that the extrinsic evidence to which the jury was exposed did not sway the verdict.  *Ofray-Campos*, 534 F.3d at 26.

Petitioner now presents a bifurcated allegation.  First, he centers his attention on note number one.  Note number one pertained to the juries' discomfort with the court security officer assigned to them.  In his second allegation Ofray-Campos claims that counsel was ineffective for failing to request mistrial when he was not present when answers were provided to the jury notes.  Petitioner's reasoning is that Pursuant to Rule 43 of the Federal Rules of Criminal Procedure he had a right to be present, particularly since neither he nor counsel were present "at the time that the judge instructed the jury on the improper response to Jury Note #2."  (D.E. 4, p. 23).  Neither claim has merit.

In relation to note number one the issue was not raised on appeal, therefore it is is foreclosed from collateral review.  *Massaro v. United States*, 538 U.S. 500, 504 (2003) (generally claims not brought up on direct appeal are barred from collateral review unless petitioner can show cause and prejudice); *Berthoff v. United States*, 308 F.3d 124, 127-128 (1st Cir. 2002) (a defendant's failure to raise a claim in a timely manner at trial or on appeal constitutes a procedural default that bars collateral review, unless the defendant can demonstrate cause for the failure and prejudice or actual innocence).

16

Ofray-Campos cannot make a showing of prejudice. The record reflects that in note number one the jury asked if the jurisdiction of Guayama, Puerto Rico included all the municipalities or nearby towns, and if they could consider the evidence included of the other charged defendants to determine or decide whether a conspiracy existed or not. (T.Tr., pp. 2552-2555).

Likewise, Ofray-Campos absence when the answers to the jury notes were provided, was neither presented to the trial court, nor raised on appeal. As such, this claim has also been defaulted. Moreover, the error would have been harmless. *United States v. Degraffenried*, 339 F.3d 576, 579-580 (7th Cir. 2003) (error in not having defendant present when note from jury was read and responded to was harmless); *United States v. Toliver,* 330 F.3d 607, 615 (3d Cir.2003) (holding that a defendant was not entitled to a presumption of prejudice when the trial judge failed to consult with defense counsel before responding to a jury note).

Moreover, Ofray-Campos' allegation that neither he or counsel were present when the court provided instructions on Jury Note #2 is contradicted by the Opinion issued on direct appeal. There, the Court stated:

> **The affidavits submitted by the parties lead us to conclude that all parties were present at the time that the district court drafted a proposed answer to Note # 2 and that the note was discussed with counsel**. ... In light of defense counsel's collective uncertainty and the Government's definitive recollection that all parties were present when the district court drafted its response to Note # 2, we find that there was no procedural error in the district court's handling of the jury note. **It is evident from the record that Note # 2 was reduced to writing, and equally evident from the Government's affidavit that the note was shown to and/or discussed with defense counsel, and that counsel thus had the opportunity to object to the proposed answer.**

*(Ofray-Campos*, 534 F.3d at 17-18) (emphasis added)

Ofray-Campos' allegation as to counsel not being present when jury note # 2 was answered is directly contradicted by the opinion issued on direct appeal. Under these circumstances, his

17

request for relief should be denied.

**Use of computer to hear recordings (Ground 5; D.E. 4, pp. 18-21)**

Ofray-Campos asserts that counsel was ineffective because he failed to object when the prosecutor made available his laptop computer in the event the jury needed to hear the recordings presented in evidence.  The events are perpetuated on the record as follows:

THE COURT:       ... I will send them to deliberate and we will be needing a machine or something for them to play the tape, a CD player.

MS. FELDMAN:    I will bring my lap top down, judge.

THE COURT:       They don't know how to work it.

MS. FELDMAN:    If they don't know how to work it –

THE COURT:       Do you have a radio or something?

MS. FELDMAN:    It does not play on a regular, the CD's for music.  It is not the same technology or format.  They will need a lap top.  We can bring them a lap top which is my own personal lap top that was used throughout trial.

THE COURT:       And how do they operate it?

MS. FELDMAN:    Well, we have to, if they wanted a read back, we would have to have the agent pull it out.

THE COURT:       That means I will have to be present in the courtroom?

MS. FELDMAN:    I believe so judge.  We can instruct them how to do it, judge.

THE COURT:       But does that mean I have to bring them out to the courtroom here for them to play?

MS. FELDMAN:    I believe so, judge, unless if someone knows how to do it, then they can do it.  We can ask.  Either we can provide someone or someone from the jury might be able –

THE COURT:       No, but they can't be here when –

18

MR. DIAZ:          It is not a difficult software.  Probably someone in the Court knows how to –

MS. FELDMAN:       It takes about five minutes.

(T.TR., 9/29/2003, pp. 2547-2549)

Prior to the commencement of jury deliberations the court excused the alternate members of

the jury and provided the following instructions:

THE COURT:         All right, and this time I want to excuse Mr. Fernando Coss Santiago and Luz Berrios.  You are the alternate members of the jury and I want to excuse you.  Thank you for being with us.  I think this concludes your jury duty because you have been here for quite some time.  Thank you for coming.  Thank you for being jurors.  You are excused.  Any other member of the jury know how to operate the lap top because I am told that it is for you, in order for you to hear the recordings, the tapes, it has to be through a lap top and you will probably have to come in here to the jury room, to the courtroom so what that means is that if at any time you want to hear the -- we will have the lap top made available and we will keep it here and if they want to come back into the courtroom, what we will do is, we will lock the courtroom, everybody out, lock the courtroom and we will put some paper in the little window there, lock the courtroom and then the jury can come in and out into the courtroom and see the evidence rather than have them taking it all in there.  We will leave and you can take a look at all the evidence here **and as soon as we have the lap top**, I will let you know and it will be set up and whoever is going to be courageous enough to work with the lap top, he or she will do so.

Remember the first thing you do, you select your foreperson and start your deliberations.  You are excused.

(T.TR., 9/29/2003, pp. 2550-2551) (emphasis added)

Ofray-Campos assumes that the computer was used by the jury and that they could have

navigated through its files and thus became exposed to extrinsic evidence.

The court's expression as to the availability of the laptop is a clear indication that a different laptop

was used for jury deliberations, or that restrictions were placed in the one provided to the jury, so that they could access only the DVD playing capabilities. Furthermore, Petitioner's argument is based on speculation that was neither brought to the attention of the trial court or on appeal. These conjectures find no support from the record and should be rejected. *United States v. Edwards*, 442 F.3d 258, 268 n.10 (5th Cir. 2006) (speculative and conclusory nature of the allegations would serve as nothing more than a fishing expedition). *See also James v. Borg,* 24 F.3d 20, 26 (9th Cir.1994) (conclusory allegations of ineffective assistance of counsel which are not supported by a statement of specific facts do not warrant habeas relief).

**Cumulative effect of errors (Ground 7; D.E. 4, pp. 24-25)**

Ofray-Campos also alleges that there was a cumulative effect of counsel's deficient performance as to his claims of error. Petitioner must establish both deficient conduct and prejudice with respect to each of his claims of ineffective assistance of counsel in order to be entitled to relief. *Middleton v. Roper*, 455 F.3d 838, 851 (8th Cir. 2006) (habeas petitioner cannot build a showing of prejudice on a series of errors, none of which would by itself meet the prejudice test); *Fisher v. Angelone*, 163 F.3d 835, 853 n. 9 (4th Cir.1998) (a legitimate cumulative error analysis evaluates only the effect of matters actually determined to be constitutional error). In the present case, the record shows that there are no individual constitutional errors, and for this reason, there is no need for a cumulative error analysis. As there is no merit to Petitioner's claims, the relief requested should be denied.

**Evidentiary hearing (D.E. 4, p. 25)**

In his initial memorandum Ofray-Campos requested an evidentiary hearing to present: 1) his own evidence; 2) testimony of prior attorneys; 3) additional evidence; and 4) legal argument. (D.E.

1-2, pp. 4-5).  In the amended petition he only moves the court to hold an evidentiary hearing.
Neither request should be granted.

A §2255 petition may be dismissed in a summary fashion if the record conclusively
demonstrates that the petitioner is not entitled to relief.  *Owens v. United States*, 483 F.3d 48, 57 (1st
Cir. 2007) (district court must grant an evidentiary hearing on the prisoner's claims unless the motion
and the files and records of the case conclusively show that the prisoner is entitled to no relief).  No
evidentiary hearing is necessary if the allegations are mere conclusions or are inherently unreliable.
*Moreno-Morales v. United States*, 334 F.3d 140, 145 (1st Cir. 2003) (stating that evidentiary
hearings on § 2255 petitions are the exception, not the norm, and are not necessary when the 2255
petition: (1) is inadequate on its face, or (2) although facially adequate, is conclusively refuted as to
the alleged facts by the files and records of the case).

A review of the record indicates clearly that no evidentiary hearing is needed to determine
that Ofray-Campos is not entitled to any relief.  His claims are without merit.  Accordingly, an
evidentiary hearing is not necessary in this case, and the requested relief should be denied.

**WHEREFORE**, in view of the foregoing, the Government respectfully submits that Petitioner's motion to vacate, set aside, or to correct sentence should be denied.

**RESPECTFULLY SUBMITTED.**

In San Juan, Puerto Rico, this 29th day of June, 2012.

ROSA EMILIA RODRIGUEZ-VELEZ
United States Attorney


/s/ *Nelson Pérez-Sosa*
Nelson Pérez-Sosa - 202201
Assistant United States Attorney
Chief, Appellate Division
United States Attorney's Office
Torre Chardón, Suite 1201
350 Carlos Chardón Ave.
San Juan, Puerto Rico 00918
Tel. (787) 766-5656


## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that on June 29, 2012, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system and have mailed by United States Postal Service the document to the following non CM/ECF participant: Heriberto Ofray-Campos, Reg. No. 23519-069, FCI White Deer, P.O. Box 1000, White Deer, PA 17887.

In San Juan, Puerto Rico, this 29th day of June, 2012.


/s/ *Nelson Pérez-Sosa*
Assistant United States Attorney
Chief, Appellate Division



U.S. Department of Justice

**H.S. García**
*United States Attorney*
*District of Puerto Rico*

---

*Torre Chardón, Suite 1201*                                    *(787) 766-5656*
*350 Carlos Chardón Avenue*
*Hato Rey, Puerto Rico 00918*

January 30, 2003

**VIA FAX: 787-250-0295**

Peter Díaz-Santiago, Esq.

Re:   United States v. Heriberto Ofray-Campos aka "Eric El Tapicero"
      Cr. No.  02-393-5  (PG)

Dear Counsel:

I have been authorized to offer your client the following plea terms:

1.   The defendant shall plead to the indictment.
2.   The base offense level will be level thirty-four (34).
3.   The base offense level shall be reduced by three (3) levels for acceptance of responsibility.
4.   The total adjusted base offense level will be thirty-one (31).

If your client does not accept this plea offer by March 1, 2003, it shall be considered rejected. Please be advised that should your client proceed to trial and have a prior drug conviction, the United States will file an information pursuant to Title 21, United States Code, Section 851, therefore enhancing the sentence to twenty (20) years or life imprisonment, depending on his criminal record.

If your client is interested in cooperating with the government, or if you believe that he is eligible to benefit from the safety valve provision, please contact me. Lastly, if you have any questions, I may be reached at 787-766-5656 x1813.

Sincerely,

H.S. García, United States Attorney

Irene C. Feldman, A.U.S.A.



U.S. Department of Justice

**H. S. Garcia**
*United States Attorney*
*District of Puerto Rico*

*Torre Chardón Building, Room 1201  (787) 766-5656*
*350 Carlos Chardon Avenue*
*Hato Rey, Puerto Rico  00918*
June 16, 2003

Peter Díaz-Santiago, Esq.
PO Box 193600
San Juan, P.R. 00919-3600
Fax: 787-758-7162

Re:    <u>United States v. Heriberto Ofray-Campos</u>; Cr. No. 02-393-5 (PG)

Dear Counsel:

      This letter is written to advise you and your client as to the potential plea terms which have been authorized by Sonia I. Torres, Chief of the Criminal Division, Office of the United States Attorney, District of Puerto Rico, in order to resolve or dispose of the above-referenced case without a trial.  Specifically, if the defendant enters a guilty plea to the indictment, the United States would agree to recommend a sentence of FOURTEEN (14) years.  The government does not oppose a term of imprisonment that would run CONCURRENT to any sentence served for local convictions.  The plea terms take into consideration the defendant's Criminal History Category, based upon our review of his record and assuming that he is not a career offender, and include enhancements for weapons and leadership/role.  If you believe that the defendant is a career offender, please advise me as soon as possible.

      If your client does not accept this plea offer by July 1, 2003, it shall be considered rejected. Please be advised that should your client proceed to trial and have a prior drug conviction, the United States will file an information pursuant to Title 21, <u>United States Code</u>, Section 851, therefore enhancing the sentence to twenty (20) years or life imprisonment, depending on his criminal record. If your client is interested in cooperating with the government, or should you have any questions, please do not hesitate to contact me.

                Sincerely,

                H. S. GARCIA
                United States Attorney

                Irene C. Feldman, A.U.S.A.